IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TREYNOR HATCHER | § | |
| | § | CIVIL ACTION NO. 2:17-cv-155 |
| v. | § | JURY TRIAL |
| | § | |
| NUECES COUNTY, TEXAS | § | |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT COUNTY'S MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE SENIOR UNITED STATES DISTRICT COURT JUDGE HAYDEN HEAD:**

**NOW COMES** Plaintiff, Treynor Hatcher, filing this his *Plaintiff's Response to Defendant County's Motion for Summary Judgment*, showing unto this Honorable Court as follows:

**I.**
**PROCEDURAL HISTORY, NATURE OF CASE AND ISSUES AT HAND**

1.  On May 8, 2017, Charles Hatcher filed on behalf of his son, T. H., his *Plaintiff's Original Complaint*, wherein it was alleged, *inter alia*, that Nueces County, Texas (hereinafter "Defendant" and/or "Defendant County") had violated T.H.'s rights pursuant to 42 U.S.C. §1983 (hereinafter "§1983") by acting with deliberate indifference to T.H.'s medical needs and the Americans with Disabilities Act (hereinafter "ADA") by failing to accommodate T.H.'s disabilities and allowing him use of available benefits and/or services – in particular by failing to accommodate T.H.'s disabilities by isolating him from others that might beat or rape him.

2.  On June 16, 2017, Defendant County filed its *Nueces County's Rule 12(b)(6) Motion to Dismiss* (hereinafter occasionally referred to as *Defendant's Motion to Dismiss* or *Motion to Dismiss*). In *Defendant's Motion to Dismiss* brought pursuant to Rule 12(b)(6), Defendant County asserted - as to Plaintiff's §1983 claims - that Plaintiff's claims had been insufficiently plead. In

response, Plaintiff filed his *Plaintiff's Response to Defendant Nueces County's Motion to Dismiss*. On July 13, 2017, this Court entered a *Memorandum Opinion an Order*, wherein all §1983 claims were dismissed.

3. On September 22, 2017, Charles Hatcher filed his *Plaintiff's Unopposed Motion for Leave to File Plaintiff's First Amended Original Complaint*, showing unto the Court that T.H. had achieved majority age and should be substituted as Plaintiff in lieu of him. On September 25, 2017, this Court entered an order granting such relief and *Plaintiff's First Amended Original Complaint* was filed the same day, substituting Plaintiff in lieu of his father.

4. On January 22, 2018, Defendant filed its *Nueces County's Motion for Summary Judgment* (hereinafter *Defendant's Motion for Summary Judgment* and/or *Motion for Summary Judgment*), wherein Defendant asserts – in one lone point - that as a matter of law, the evidence in this case CANNOT support a finding of intentional conduct sufficient to support compensatory damages under the ADA.[1]

5. It is in response to such assertion and such assertion alone contained within *Defendant's Motion for Summary Judgment*, that Plaintiff responds herein.

## II.
## EXHIBITS IN SUPPORT

During this pleading, Plaintiff may refer to the exhibits submitted to this Court by Defendant in its *Motion for Summary Judgment*. To the extent other exhibits are referenced by Plaintiff, Plaintiff has attached (and incorporates herein by reference) as Appendix I, his *Exhibit List in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment*.

---

[1] *Defendant's Motion for Summary* Judgment states that "[i]n light of Hatcher's uncontested allegations and these incontrovertible facts, this motion asks the Court to consider the following issue: *As a matter of law, did the County's conduct constitute intentional discrimination?*" (D.E. 25, *Defendant's Motion for Summary*, p. 3).

## III.
## STANDARD OF REVIEW

In order for Defendant to prevail under Federal Rule of Procedure 56, it must, as movant herein, establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Importantly, the trial court must:

- **(1) Accept all of the non-movant's evidence as true;**
- **(2) Indulge all reasonable inferences in the non-movant's favor; and**
- **(3) Resolve all disputes in the non-movant's favor.**

*Adickes v. S. H. Kress and Co.*, 396 U.S. 144, 158-59 (1970). The movant's burden of proof for obtaining summary judgment depends upon whether one is seeking summary judgment on a matter where one will bear the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the movant bears the burden of proof at trial, he has the burden to make "a *prima facie* showing that [he] is entitled to summary judgment," by presenting sufficient evidence to demonstrate that he would be entitled to a directed verdict at trial if the opposing party does not offer controverting evidence. *Celotex Corp. v. Catret*, 477 U.S. 317, 330-31 (1986).

On the other hand, when a party moves for summary judgment on an issue where the non-movant will bear the burden of proof at trial, summary judgment is mandated if the non-movant fails to make sufficient showing to establish all elements essential to its case. *Id*. at 324. In these circumstances, the movant satisfies its burden of proof by either: (1) submitting "affirmative evidence that negates an essential element of the non-moving party's claim;" or (2) identifying a specific claim or element of a claim on which the opposing party, after sufficient discovery, has been unable to produce evidence sufficient to establish an essential element of his claim. *Id*. at 331. Thus, a Defendant seeking summary judgment on one of the Plaintiff's claims meets its summary judgment burden of proof when it identifies an element of that claim to which the

Plaintiff will not be able to offer sufficient evidence at trial. *Id*. at 321. In the present case before the Honorable Court, Defendant has failed to sustain its burden of proof and persuasion in regard to its assertion that the evidence in this case cannot support a finding of intentional conduct/discrimination and its *Defendant's Motion for Summary Judgment* should therefore be denied.

Despite such, the issue before the Court is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. In this matter and in particular the issue concerning the "intentionality" element of the ADA violations, the former of the two is unquestionably the case.

## IV.
## FACTUAL MATERIAL ISSUES

While typically one might expect Plaintiff vigorously contest the facts asserted by Defendant, such is not the case at hand. In fact, Plaintiff agrees - and except to the extent as noted herein - with the majority of the facts (as opposed to the opinions concerning the ramifications of same) asserted by and/or acquiesced to by Defendant in the *Summary Judgment Record* portion of *Defendant's Motion for Summary Judgment*. Plaintiff would even further state that based on such facts and admissions contained within *Defendant's Motion for Summary Judgment* and the exhibits in support of same, Plaintiff's response seems unnecessary, as *Defendant's Motion for Summary Judgment* seems to defeat itself in showing genuine issues of material facts concerning Plaintiff's claims and/or in failing to explain why Plaintiff was not placed in protective custody despite its apparently retroactive belief that such was necessary. Nonetheless and despite Plaintiff's agreement with such, Plaintiff does believe such facts are selectively deficient so as to provide the Court with an accurate picture of this case.

Before addressing various facts or assertions Plaintiff believes were left out of Defendant's limited rendition of the events forming the basis of this suit, Plaintiff would have the Court note a few factual issues which are not at issue and/or contested by Defendant County. First and foremost is the issue of whether or not the sexual assault was consensual. While Defendant states it is not contesting the unconsented sexual assault occurred for purposes of the motion, it nonetheless spend a lot of time trying to convince this Court otherwise. While not necessary to the issues herein, Plaintiff feels compelled to point out that such was not consensual in any form or fashion and that he was verbally and physically threatened and orally and anally assaulted on two different days. (See Defendant's exhibits starting at page 73, Deposition of Treynor Hatcher, p. 79/3-15 (illustrating the threats by Darling[2] - "I'm going to take your dick. Either you give it to me or I'm going to take it from you"), p. 88/16 -25 ("You come with me or I will find you after I get out"), p. 92/8-15 (It was just -· it was just as soon as he said it, "Now" -- what he said was, "I'm going to now put it into your butt," and I was like, "No," and he was like, "Yeah, you are. I am going to make you do it," and I was like "Don't do this," and he was like, "Yeah, I'm going to do it, so pull down your pants, and I was like "Oh, okay," and so I did that, and then immediately that's what happened.); Exhibit "1," Photos Extracted from Video evidence submitted by Defendant showing Plaintiff being dragged across the room to the area where the assault occurred). Such evidence shows beyond debate that the sexual assault of Plaintiff was not consensual in nature. Again though, such issue is not being contested by Defendant at present. Other facts and/or concerns that are not being contested and/or are not at issue, include but are not limited to, the following: 1) whether Plaintiff meets the "physical-injury requirement" for ADA claims; 2) whether the ADA

---

[2] Clifton Darling, who has a tremendous history of violence and abuse, was in the Nueces County Jail on a "sex crime" charge. (Exhibit "2," Criminal History of Darling).

applies to Defendant[3]; 3) whether Plaintiff qualifies as disabled under the ADA; 4) whether Plaintiff needed an accommodation; and/or 5) whether Plaintiff was denied an accommodation.

In Defendant's *Motion for Summary Judgment*, Defendant simplifies a few issues in order to convince this Court (this is despite the fact that they admit such in same) that there is a "lack of notice" in this case. First, Defendant ignores the testimony of Charles Hatcher (Plaintiff's father). Immediately following his son's arrest, Mr, Hatcher repeatedly called the Nueces County Jail, pleading with the jail nurse and others to put Plaintiff in isolation because of his mental problems. (Exhibit "3," Deposition of Charles Hatcher, pp. 13/2-21, 17/6-24). Receiving nothing but curt and unhelpful responses, Mr. Hatcher then called Dr. Carol DeLine (hereinafter "Dr. DeLine"), thinking that "maybe she could do something . . . I'm a nobody, she's a doctor." (Exhibit "3," Deposition of Charles Hatcher, p. 33/24). Second, Defendant glosses over the testimony of Dr. Carol DeLine (hereinafter "Dr. DeLine"), a neurologist at the Children's Physician Services of South Texas for the last twenty years and Plaintiff's treating physician for Plaintiff for over a decade. (See Defendant's exhibits starting at page 109, Deposition of Dr. Carol DeLine, pp. 6/24-7/10). After receiving a call from a panicked Charles Hatcher concerning Plaintiff being placed in the Nueces County Jail, Dr. DeLine called the jail and explained to them that Treynor was a long-term patient of hers, that he has Asperger Syndrome and that based on her familiarity with jails, Treynor was at high risk to be either sexually abused or beat up.[4] (See Defendant's exhibits

---

[3] *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998) (finding that Title II of the ADA covers inmates in state prisons and local jails); *Goodman v. Georgia*, 126 S.Ct. 877, 546 U.S. 151, 163 L. Ed.2d 650 (2006) (holding that Title II of the ADA abrogates state sovereign immunity insofar as it creates a private cause of action for damages under the ADA).

[4] The actual wording Dr. DeLine used with the Jail was that she was fearful Treynor would be "beat up or raped". (See Defendant's exhibits starting at page 109, Deposition of Dr. Carol DeLine, pp. 42/22-43/1; 43/22-44//2).

6

starting at page 109, Deposition of Dr. Carol DeLine, pp. 16/1-11). Dr. DeLine had done so because she knew, based on her experience, that Plaintiff was vulnerable and that "[y]ou don't have to be a rocket scientist to look at Treynor and say that he would not be someone that you would want in a general arrest population." (See Defendant's exhibits starting at page 109, Deposition of Dr. Carol DeLine, pp. 40/15-21, 41/7-10).

As to the ONLY issue presented by Defendant concerning *intentionality* of the conduct at hand, the facts noted above are helpful and illustrate that even if a traditional definition of intent were to be employed in evaluating Plaintiff's claims (Plaintiff will explain why that is not so in Section V below), there would certainly exist material fact issues in this case that should preclude summary judgment.

## V.
## ARGUMENTS AND AUTHORITIES

As pointed out by Defendant, to make out a prima facie case under Title II (generally), a plaintiff must show 1) that he is a qualified individual within the meaning of the ADA, 2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004). In this case, Defendant County has not actually disputed and/or addressed any of these prongs, including the third, which is satisfied under a "failure to accommodate theory." *Windham v. Harris Cty.*, 875 F.3d 229, 235 (5th Cir. 2017). While such fact alone should preclude summary judgment, the actual standard is a bit different for cases as the one at hand. In evaluating the claims in *Windham*, the Fifth Circuit clearly explained as follows:

> Windham attempts to satisfy the third prong on a theory of "failure to accommodate." That theory is expressly codified in Title I of the ADA (governing employment), which defines "discriminat[ion] . . . on the basis of disability" to include "not making reasonable accommodations [for a disabled employee's] known physical or mental limitations." 42 U.S.C. § 12112(b)(5)(A). Although Title II contains no similarly explicit definition, see 42 U.S.C. §§ 12131, 12132, our cases recognize that a public entity's failure reasonably to accommodate the known limitations of persons with disabilities can also constitute disability discrimination under Title II.

*Id.* at 235. In *Windham*, the Court went on to state that the critical component of a Title II claim for failure-to-accommodate is proof that the disability and its limitations were known by the entity providing public services. *Id.* at 236. Based on such, in cases concerning a failure-to-accommodate claim under Title II, a Plaintiff is required to prove as follows: 1) that he is a qualified individual with a disability; (2) that the disability and its consequential limitations were known by the entity; and (3) that the entity failed to make reasonable accommodations. *Id.* at 236; see also *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015); *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013); *Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 Fed. Appx. 214 (5th Cir. 2015).

In the instant case, there is ample evidence to satisfy each of these elements. Plaintiff is a qualified individual with disability – such is not disputed and readily admitted by Defendant in its *Motion for Summary Judgment*. Plaintiff's disability and the ramifications of such disability were made known to Defendant repeatedly and from Plaintiff's very own medical professional. In its *Motion for Summary Judgment*, Defendant actually states that "the classification officer noted that Hatcher had "autism," a disability that would require a special housing requirement . . . and with consideration also given to the nature of Hatcher's charge, the classification officer assigned Hatcher to a protective custody housing unit." Considering that Defendant has admitted to the very elements Plaintiff must prove, summary judgment should be denied on such alone. Defendant

8

knew and did nothing.

In light of its admissions, the only defense that Defendant could come up with was that while it might have knowledge of a necessary accommodation and did not comply with such, it had no duty to accommodate under the ADA until *housing* began[5] at some later unknown date. In essence, what Defendant claims is that they had NO DUTY to protect anyone under any theory (ADA, §1983 or otherwise) during the time those persons are in "holding" prior to "housing" even if they have knowledge of a concern, problem or danger to those person(s). Such a bold position that the ADA is trumped by Texas Jail Standards finds no support in the law and/or the Texas Jail Standards. In fact, the Texas Jail Standards – enacted for the protection of citizens housed in Texas jails at ALL times during their "stay" – state just the opposite. In that regard, the Texas Jail Standards require that an "intake screening" shall be conducted *immediately* on all inmates admitted for purposes of identifying any medical, mental health or special needs that require placing inmates in special housing units. TEX.ADMIN.CODE §271.1(b)(1); see also Defendant's exhibits starting at page 71. In those circumstances that such screening determines that an inmate requires protection, said inmate is to be housed not in a holding cell, but in an "administrative separation" single cell. TEX.ADMIN.CODE §253.1(16) (defining Administrative Separation- as "the assignment of an inmate to a special housing unit, usually a separation or single cell when staff determines that such close custody is needed for the safety of [an] inmate . . ."); see also Defendant's exhibits starting at page 71. While Defendant makes a stab at arguing that placing Plaintiff in a holding cell was "protective custody", such assertion is undermined by its opposite

---

[5] Curiously, Defendant offers no explanation for why Plaintiff was still being held in a holding cell beyond the 48-hour limitation. TEX.ADMIN.CODE §253.1(16) (defining a "holding cell as "a cell designed for the temporary holding of inmates not to exceed 48 hours.").

9

position that it did not place him in protective custody because it was not required.

In this case, Defendant did not make the reasonable accommodation of merely placing Plaintiff in his own cell. Defendant relies heavily on the argument that Plaintiff must show intent to discriminate. While Plaintiff would assert that such intent – whatever the definition – is shown by the evidence at hand, the "intent" the subject of ADA claims is not intent in the traditional sense of the word. To recover compensatory damages for disability discrimination under Title II of the ADA, a plaintiff must only show that the discrimination was "intentional" in the sense that it was more than disparate impact. *Windham v. Harris Cty.* at 236 [citing to *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002)]. In this case, whether Defendant (by and through its employees) intentionally or otherwise made the choice to no accommodate Plaintiff's disability is irrelevant and does not bear on the issue at hand. The intent for the purpose of a failure-to-protect case is illustrated and supported by the evidence presented by all parties in this cause.

In its *Motion for Summary Judgment*, Defendant also spends much time addressing some notion or form of *Monell* liability (*i.e.* rare instances, no notice, following policies, etc…), seemingly arguing again that because there are few reported rapes in holding cells, that it is without sufficient notice for liability to attach. While such attempt might bear weight under failure-to-protect claims under §1983, they have no application to ADA claims, where liability is premised on *respondeat superior* alone. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574-575 (5th Cir. 2002).

The Texas Jail Standards specifically state that it is "the duty of the commission to promulgate reasonable written rules and procedures establishing minimum standards, inspection procedures, enforcement policies and technical assistance for . . . the custody, care and treatment of inmates" and there is no exception to that obligation under the Texas Jail Standards for the first

48 hours of custody or whatever time period Defendant had in mind within which to actually implement its "protective custody" of Plaintiff. TEX.ADMIN.CODE §251.1. Defendant does not assert that isolating Plaintiff was not a reasonable accommodation. Instead Defendant argues that although isolating Plaintiff is a reasonable accommodation, such was not reasonable during Plaintiff's "processing" for a period of four days. Such illogical and unconstitutional reasoning should be ignored and *Defendant's Motion for Summary Judgment* should be denied.

## VI.
## CONCLUSION

A Court's determination of a summary judgment motion requires deference to the non-moving party. *Willis v. Roche Biomedical Laboratories, Inc.*, 21 F.3d 1368, 1371 (5th Cir. 1994). If there is any evidence in the record from any source from which a reasonable inference in the Plaintiff's favor may be drawn, summary judgment cannot be granted. *Id*. at 1372. In the *Willis* case, the Fifth Circuit stated the principle that:

> [C]ourts must be vigilant in determining whether either an inference or circumstantial evidence might suffice to create the existence of a factual dispute about the claims – lest courts "use summary judgment as a 'catch penny contrivance to take unwary litigants into [their] toils and deprive [the litigants] of a trial [to which they are actually entitled].'" (citations omitted)

*Id*. at 1371.

By and through the above argument, Plaintiff has clearly met the burden necessary to establish his claims versus Defendant. In conclusion, when Plaintiff's evidence is accepted as true and all reasonable inferences indulged and disputes resolved in Plaintiff's favor, there exist genuine issues of material facts concerning the claims addressed herein. The issue as to summary judgment is whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). As indicated earlier, a Court's determination of a summary judgment motion requires deference to the non-moving party. If there is any evidence in the record from any source from which a reasonable inference in the Plaintiff's favor may be drawn, summary judgment cannot be granted.

Plaintiff needed a simple accommodation. Defendant was on notice of such and did not do so. As a result, Plaintiff was raped over the course of several days. Based on such and the above, *Defendant's Motion for Summary Judgment*, much like its "protective custody" of Plaintiff, must fail.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully pray that this Court deny *Defendant's Motion for Summary Judgment*.

Respectfully submitted,

GALE LAW GROUP, PLLC
P.O. Box 2591
Corpus Christi, Texas 78403
Telephone: (361)808-4444
Telecopier: (361)232-4139

By: /s/ *Christopher J. Gale*
Christopher J. Gale
Southern District Bar No. 27257
Texas Bar No. 00793766
E-mail: Chris@GaleLawGroup.com
*Attorney-in-Charge for Plaintiff*

By: /s/ *Amie Augenstein*
Amie Augenstein
Southern District Bar No. 2236723
Texas Bar No: 24085184
E-mail: Amie@GaleLawGroup.com
*Attorney for Plaintiff*

**NOTICE OF ELECTRONIC FILING**

The undersigned counsel hereby certifies that he has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Southern District of Texas on the 19th day of February, 2018.

/s/ *Christopher J. Gale*
Christopher J. Gale

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 19th day of February, 2018, a true and correct copy of the above and foregoing has been sent to the following counsel of record by means indicated below:

| | |
|---|---|
| Jenny Cron | *Via E-File Notification* |
| Jeffrey Pruitt | *& By Email:* jeffrey.pruitt@nuecesco.com |
| NUECES COUNTY DISTRICT'S ATTORNEY'S OFFICE | *& By Email:* jenny.cron@nuecesco.com |
| 901 Leopard St., Room 207 | |
| Corpus Christi, Texas 78401 | |

*/s/ Christopher J. Gale*
Christopher J. Gale